# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ELISHA L. GRIFFITH

    Plaintiff,

  v.

CHANCE BLANKENSHIP, et al.,

    Defendants.

Case No. 1:24-cv-307

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Defendants Chance Blankenship, Pam Wagner, and City of Ironton, Ohio, (collectively, Defendants) have moved this Court to dismiss Plaintiff Elisha L. Griffith's Complaint under Federal Rule of Civil Procedure 12(b)(5)[1] for untimely service. (Doc. 12). Given that Griffith complied with the Court's extended deadline in serving Defendants, and the Court's strong preference to decide matters on the merits, the Court **DENIES** the motion.

## BACKGROUND

Griffith filed this suit on June 1, 2024. (Doc. 1). She failed, however, to serve the Defendants in the required ninety days. Fed. R. Civ. P. 4(m). So, some eight months into the case, she moved the Court to provide her an additional twenty-eight days in which to effectuate service. (Doc. 2). In her motion, Griffith explained that, after filing suit in this matter, her counsel contacted "likely counsel for the

---

[1] When deciding a Rule 12(b)(5) motion, the Court may refer to record evidence to determine the sufficiency of service, including "uncontroverted affidavits." *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006).

Defendant[s] to discuss service of process," including a discussion of waiving service, but admits they did not reach a "formal agreement on the same." (*Id.* at #14).

Based on those facts, Griffith pressed two different arguments in support of the requested extension. First, she noted that Rule 4(m) requires the Court to grant an extension on a showing of good cause. (*Id.*). And she said good cause existed here because (1) she "was conducting [an] investigation in an effort to save ... the time of multiple motions related to amendment of the complaint" and (2) "each known Defendant is aware of this suit by previously agreeing to waive service of the summons." (*Id.* at #15). Separately, she argued that, even absent a showing of good cause, the Court still has discretion to grant the extension. And here, the "equitable factors traditionally relied upon by the District Court[s]" warranted such a discretionary extension.[2] (*Id.* at #16).

The Court granted Griffith's motion by notation order, permitting her until March 18, 2025, to serve the defendants. (2/18/25 Not. Order). All three defendants were served on March 18, 2025, the last day Griffith could do so. (Docs. 8–10).

Twenty-two days after being served, Defendants collectively moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(5) for Griffith's failure to serve them within the ninety days required by Rule 4(m). (Doc. 12, #47). There,

---

[2] Griffith lists and discusses five factors traditionally considered in this District. (Doc. 2, #16). However, more recent Circuit precedent has established seven factors to be considered, the first five of which are substantially similar to the factors cited by Griffith here. *See United States v. Oakland Physicians Med. Ctr.*, LLC, 44 F.4th 565, 569 (6th Cir. 2022).

2

Defendants recounted additional facts regarding the parties' communications about service in an effort to show that Griffith's delay was unjustified. (*Id.* at #45–47).

According to Defendants, the story goes something like this. On June 3, 2024, (two days after Griffith filed suit) Griffith's counsel reached out to Defendants' counsel asking whether Defendants' counsel would accept service on behalf of all Defendants. (*Id.* at #45). Griffith's counsel did so because he was aware that Defendants' counsel represented Defendants City of Ironton and Chance Blankenship in an unrelated matter.[3] (*Id.*). In response, Defendants' counsel "advised [Griffith's] counsel that it was not the firm[']s practice to accept service on behalf of parties 'especially given that Chance Blankenship and Pam Wagner are no longer with the City and [she did] not yet know if/who [she] w[ould] represent.'" (*Id.* at #45–46 (quoting Frick Decl., Doc. 12-1, #59)). At the same time, Defendants' counsel offered to assist with waiving service if Griffith's counsel sent service with waivers, forwarding her a copy as well. (*Id.* at #46).

Defendants' counsel heard nothing further (nor were any of the Defendants served or asked to waive service) until August 29, 2024—coincidentally the ninety-day deadline for service under Rule 4(m). (*Id.*). On that day, Griffith's counsel "inexplicably requested permission from [Defendants' counsel] to sign waivers himself *on behalf of the Defendants*. (*Id.* (emphasis in original) (citing Doc. 12-1, #58–59)). Defendants' counsel refused, informing Griffith's counsel that this would be

---

[3] Defendant Pam Wagner was also a defendant in that matter, (*see Murphy v. McKnight*, No. 1:23-cv-588 (S.D. Ohio)), but was not represented by Defendants' counsel. Griffith's counsel represents the plaintiff in *Murphy*.

3

improper under Federal Rule of Civil Procedure 4(d). (*Id.* (citing Doc. 12-1, #58)). Griffith's counsel simply responded by forwarding the Complaint and waivers to Defendants' counsel the next day; Defendants' counsel heard nothing further for over three months. (*Id.*).

Finally, on December 11, 2024, Griffith's counsel asked: "With respect to Griffith, where do we stand on the waivers of service? I know we sent them to you on August 30. The Court reached out to me yesterday about service, so I need to give them a response." (*Id.* (quoting Doc. 12-1, #68)). Defendants' counsel responded, again informing Griffith's counsel that none of the Defendants had been served; that she still could not definitively say whether her office would be representing Defendants Blankenship and Wagner; that while she had offered to assist with getting waivers signed, she could not accept service on behalf of everyone; and finally, that while the deadline for service had passed, she was willing to discuss the issue with Griffith's counsel. (*Id.* at #46–47 (quoting Doc. 12-1, #67)). The following day, the attorneys spoke and Griffith's counsel "indicated that he would send notice and waivers to the Defendants." (*Id.* at #47). He did not do so. (*Id.*). Defendants' counsel heard nothing further until Griffith's motion for extension of time and subsequent service of Defendants on March 18, 2025. (*Id.*).

Based on these facts, Defendants largely argue the opposite of Griffith's (already granted) motion for an extension. (*See generally id.*). First, Defendants argue that Griffith's proffered reasons for good cause were factually unsupported— "Defendants are aware of no such 'investigation' and there is simply no evidence that

4

'each known Defendant' was aware of the suit or that they previously agreed to waive service of summons." (*Id.* at #45). They then point out that Griffith "delayed timely service in the instant case by over six months beyond the federal prescribed limit [of ninety days]," and that she has not demonstrated good cause. (*Id.* at #49–55). Defendants also argue that the equitable factors courts consider in granting a discretionary extension when good cause is not present did not favor such an extension. (*Id.*); *see Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 569.

Griffith responded to that motion to dismiss, attempting to add more factual context. (Doc. 15, #74–75). For example, she explained that before she filed suit, her counsel had reached out to Defendants' counsel "no less than six times" about a "pre-suit resolution of this matter." (*Id.* at #74 (emphasis removed)). Other than an initial telephone call, those communications largely went unanswered. (*Id.*). Griffith then largely restates the facts detailed by Defendants, but instead interprets those same facts as demonstrating that "Defendants' counsel volunteered to assist in having her clients execute waivers under their duty pursuant to Fed. R. Civ. P. 4(d)(1)." (*Id.* at #75). Finally, she explains that her counsel was "dealing with a family medical emergency" in January and February, a fact that Defendants' counsel and the Court were aware of when Griffith filed the motion to extend the service deadline. (*Id.* at #75, n.4). Griffith also, once again, argues that good cause existed, and that in the alternative, the extension was a proper exercise of discretion. (*Id.* at #78–82). She also maintains that the Court's prior extension should stand. (*Id.* at #83). Defendants have filed a Reply (Doc. 16), so this matter is ripe for the Court's review.

5

## LEGAL STANDARD

In resolving a motion to dismiss for insufficient service under Rule 12(b)(5), the burden is on the party asserting the validity of service to demonstrate that service on the moving party "satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotations and citations omitted); *accord Robinson v. Tenn. Highway Patrol*, No. 1:16-cv-1296, 2017 WL 3234390, at *2 (W.D. Tenn. July 31, 2017). Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant within ninety days after filing her complaint. If a plaintiff fails to do so, but shows good cause for that failure, the Court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Moreover, even "absent a finding of good cause, the court retains discretion as to whether or not to enlarge that timeframe." *Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 568. In exercising that discretion, district courts must consider seven factors:

> (1) whether an extension of time would be well beyond the timely service of process; (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred; (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies; (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Id.* at 569.

## LAW AND ANALYSIS

Defendants argue that because Griffith did not serve them within ninety days of filing her Complaint, and because she can neither show good cause for that delay nor satisfy the *Oakland Physicians* factors, the Court should dismiss the case with prejudice.[4] (Doc. 12, #44, 48–49). The Court disagrees. Given that Griffith properly served the Defendants by the date the Court required in its previous order, (*see* 2/18/25 Not. Order), and the Court's strong preference for resolving matters on the merits, the Court denies Defendants' Motion to Dismiss (Doc. 12).

As the party asserting the validity of service, the burden is on Griffith to demonstrate that she effectuated service in accordance with Rule 4. *Light*, 816 F.2d at 751. She has done so. Griffith properly served the Defendants by the March 18, 2025, deadline that the Court set. (Doc. 15, #75; *see* Docs. 8–10). True, service occurred, as Defendants note, well outside the ninety-day period that Rule 4(m) contemplates. (Doc. 12, #48). But "court[s] retain[] discretion as to whether or not to enlarge that timeframe," *Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 568 (citation omitted), even where good cause is not present—and the Court used its discretion to do that here, (*see* 2/18/25 Not. Order). Defendants' motion largely fails to even grapple with this fact.

Defendants perhaps come closest to addressing that flaw when they argue that "[t]his Court's exercise in discretion granting Plaintiff's extension was based upon

---

[4] Defendants do not explain why a dismissal for lack of service would be with prejudice. Typically, when a court dismisses on that ground, the dismissal is without prejudice. *See* Fed. R. Civ. P. 4(m).

7

half-truths." (Doc. 16, #129–30). According to Defendants, because "[t]he full set of facts and Defendants' objections" were not known to this Court when it granted the extension, their "rights" should be "restore[d]." (*Id.* at #130). This may be an attempt to ask the Court to reconsider its earlier order granting Griffith the extension. But even if the Court construes Defendants' motion as seeking such reconsideration, the Court declines to grant it. *See, e.g., Retamar-Lopez v. Dublin City Sch. Dist. Bd.*, No. 2:13-cv-161, 2013 WL 12130340, at *1 (S.D. Ohio June 27, 2013) (denying a motion for reconsideration of the court's extension of the time for service).

The Court acknowledges, as Defendants argue, that Griffith's reasons for the delay in service may fall short of the "reasonable, diligent effort" that generally constitutes good cause. *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021) (quoting *Pearison v. Pinkerton's Inc.*, 90 F. App'x 811, 813 (6th Cir. 2004)). For example, when Defendants' counsel told Griffith's counsel that "it was not the firm[']s practice to accept service on behalf of parties," Griffith should have timely served the individual defendants. (Doc. 12, #45). He did not do so. Indeed, he did not do much of anything. It is difficult to characterize that as "good cause."

But as Defendants acknowledge, a lack of good cause only means that an extension is not *mandatory*. (*Id.* at #49). Courts retain *discretion* to extend the time to effectuate service if the situation warrants it. *See Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 568. That is what the Court did in February, (*see* 2/18/25 Not. Order), and the Court declines to overturn that Order now. That is because, even had the

8

Court known the full facts and arguments that the parties have put before it now, the Court still would have exercised its discretion to grant the extension.

To see why that is so, consider the seven *Oakland* factors. The first one asks whether service would be "well beyond the timely service of process." *Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 569. Here, Griffith sought the extension roughly five months after the time expired under Rule 4(m). That seems at least on the cusp of "well beyond," so that factor arguably favors Defendants. And Griffith is represented by counsel, so the sixth factor—"whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process," *id.*—lends some support to Defendants' position as well. But the rest of the factors do not. Defendants point to no prejudice beyond delay in defending the suit (factor two); the counsel to whom Griffith's counsel directed his inquiries was representing Defendants in another similar case, and ended up representing Defendants here, so it is reasonable to conclude that Defendants had knowledge of the suit (factor three); even assuming that the Ohio savings statute would apply here, *see Webster v. Spears*, 664 F. App'x. 535, 537 (6th Cir. 2016)—meaning Griffith would have a year to refile[5]—the associated cost and delay arguably create prejudice to Griffith (factor four), while providing no meaningful benefit to Defendants; while one could certainly question Griffith's "diligence," it does appear that her counsel made at least some ongoing efforts to move the service issue along (factor five); and the equities favor

---

[5] Griffith states that "dismissal risks barring [her] claims due to the statute of limitations," and that if the matter was dismissed, she would have "approximately 24 hours to re-file this matter." (Doc. 15, #82). As far as the Court is aware, she would have a year to refile her suit.

9

deciding this excessive force claim involving personal injuries—including a fractured orbital bone, (*see* Doc. 15, #77 (depicting the alleged injury))—on the merits (factor seven). On balance, these factors warrant the extension of time for service that Griffith requested and that the Court granted.

## CONCLUSION

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss (Doc. 12).

**SO ORDERED.**

December 16, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

10